In the Matter of the Application of EDWIN W. FISKE, Appellant, for a Peremptory Writ of Mandamus.

EDWARD F. BRUSH, Respondent.

In the Matter of the Application of EDWARD F. BRUSH, Appellant, for a Peremptory Writ of Mandamus.

EDWIN W. FISKE, Respondent.

Second Department, January 16, 1918.

Elections — canvass of soldier ballots — intent — constitutional law.

Under section 514 of the Election Law, as amended by chapter 815 of the Laws of 1917, relating to the canvass of soldiers' votes, providing " that no ballot shall be rejected as void where the intent of the voter is clearly apparent," the determination of the question of intent is one of fact, and the power to pass thereon is lodged with the inspectors of election.

Where, in an election conducted at a military camp, one ballot was voted for mayor in the blank space for city chamberlain and another in the space for superintendent of the poor, and it appears that there was no vacancy to be filled for the office of superintendent of the poor, and that the city had no such office as city chamberlain, the local inspectors of election were justified in finding that such ballots were valid and could be counted for mayor.

The intent of the voter should be gathered from the face of the ballot itself, and the local inspectors cannot be governed by extrinsic evidence or by affidavits.

A ballot on which the voter had twice written his name and address, stating
that he voted "the straight Democratic ticket," was also properly counted.
Such ballot is not in contravention of the Constitution because so marked.

Section 1 of article 2 of the Constitution, securing the vote to soldiers and
sailors in actual service, does away with objections which might otherwise
render the ballots in question void.

PUTNAM, J., dissented as to the ballot containing the written declaration.

APPEAL in each proceeding by the relators, Edwin W. Fiske
and Edward F. Brush, from parts of an order of the Supreme
Court, made at the Westchester Special Term and entered
in the office of the clerk of the county of Westchester on the
26th day of December, 1917.

In the second election district of the fourth ward of the city
of Mount Vernon one ballot was voted for Fiske in the blank
space for city chamberlain, and another in the space for
superintendent of the poor, and a third ballot was marked
otherwise than in the proper voting space. There was written
twice on this ballot: "I, Patrick W. McCarthy, of 7 Short
Street, Mt. Vernon, N. Y., vote the straight Democratic
ticket." Signed, "Patrick W. McCarthy, 7 Short Street,
[Mount Vernon] N. Y." The election inspectors had
returned all these ballots as "protested," but had counted
the three for Edwin W. Fiske for mayor. Both opposing
candidates applied for a mandamus, which proceedings were
consolidated.

The learned justice at Special Term held, by his order
entered December 26, 1917, that the McCarthy ballot was
properly canvassed, but that the other two ballots should
not have been counted for the office of mayor, and directed
a mandamus to issue to such inspectors to make such correction.

The relator Fiske appealed from so much of said order
as rejected the two ballots marked respectively in the printed
spaces for city chamberlain and superintendent of the poor,
and the relator Brush took an appeal from so much of the
order as approved the counting of the ballot of the voter with
the name Patrick W. McCarthy written thereon.

*Arthur M. Johnson* [*Sydney A. Syme* and *Frank A. Bennett*
with him on the brief], for Edwin W. Fiske.

*George H. Taylor, Jr.* [*James H. Cavanaugh* with him on
the brief], for Edward F. Brush.

PER CURIAM:

The present statute for elections by soldiers, sailors and marines (in compliance with the Constitution, art. 2, § 1) contains an important exception not found in the prior statute for voting in the Spanish War (Laws of 1898, chap. 674). As the formalities for testamentary acts are modified for soldiers and mariners who may make nuncupative wills (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 16), so the Legislature has given authority to count ballots that may not be perfect in form by the proviso " that no ballot shall be rejected as void where the intent of the voter is clearly apparent." (Election Law, § 514, as amd. by Laws of 1917, chap. 815, § 6.)

The determination of the question of intent is one of fact. Such power to pass on the voter's intent is lodged with the inspectors of election. Such election conducted in a military camp might leave the soldier uncertain where to mark his vote, when there was before him a general ballot printed by the Secretary of State, which did not accurately show the local offices to be filled in the city of Mount Vernon. We are all agreed that, inasmuch as there was no vacancy to be filled for the office of superintendent of the poor, and Mount Vernon had no such office as city chamberlain, the local inspectors of election could rightly find that such ballots were not void, and that they could be counted, as the inspectors proceeded to do, for the relator Fiske. We are also of the view that such intent should be gathered from the face of the ballot itself, and that the local inspectors cannot in such count be governed by extrinsic evidence or by affidavits.

The majority of the court are also of the opinion that the ballot with the name Patrick W. McCarthy written thereon was properly counted for the relator Fiske.

The express provisions of the Constitution (Art. 2, § 1) securing the vote to the soldier and sailor in actual military service of the United States, dominates the situation, doing away with what might otherwise be a valid objection to the ballot in question. The intent of the voter is clearly apparent, as found by the local inspectors and the learned justice below. Referring to the alleged marking of the ballot by the written declaration thereon that the soldier voted the straight Demo-

cratic ticket, signed with his name and address, and the claim that the counting of such ballot violates the constitutional requirement of secrecy, the right of an elector is conferred by the Constitution, and whenever he exercises that right in conformity with the methods prescribed by law, he is entitled to see that his vote is given full force and effect in the determination of what persons were elected to office. (*People ex rel. Deister* v. *Wintermute,* 194 N. Y. 99.) The People of the State have by express provision of the Constitution, in the 1st section of article 2, declared that no elector in the actual military service of the State or of the United States, in the army or navy thereof, shall be deprived of his vote by reason of his absence from his election district; and that the Legislature shall have power to provide the manner in which, and the time and place at which, such absent electors may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

Here is a complete statement of the fundamental law, and an express direction to the Legislature to make it effective. The Constitution then goes on (Art. 2, § 2) to exclude certain persons from the right of suffrage, barring those who receive or pay money as compensation for the giving or withholding of a vote, or who make promises with that end in view, or who are interested in wagers on the result. Section 3 declares that no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in navigation; nor while a student at a seminary or the inmate of a public almshouse or asylum, nor while confined in prison. Then follow, in section 4, provisions for registration of the voters before they shall be entitled to vote.

This is followed by section 5:

" All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved."

We are of opinion that the McCarthy ballot is not in contravention of the Constitution. From the necessities of the case, the soldier and sailor vote in camps at the front, and on board warships, cannot be subjected to the many

precautions and protections thrown about the election at home, and there is no such requirement in the positive direction to the Legislature found in section 1. The basic provision is that the man who is serving his country shall not be deprived of his vote. Registration is necessarily done away with. Bi-partisan election officials cannot be provided. The law of 1917 (Chap. 815), under which McCarthy's vote was cast, preserves the vote by ballot, and every possible means is provided to assimilate the casting of the soldier's vote with the method pursued in the cities, towns and villages. But through all this, there stands the right of the soldier to vote, dominating everything else. McCarthy voted by ballot; there is no suggestion that, at the time he voted, his vote was not secret. We do not construe his declaration that he voted the straight Democratic ticket as a joke, or a mere flamboyant demonstration of party loyalty. He was far away from home. Under the Constitution he had the right to vote for every candidate for public office that his more favored fellow-citizen voted for in the safety of his home city, surrounded by all the paraphernalia and conveniences of the election machinery. Sample ballots, the party emblem on the ballot, the right to assistance in casting his ballot, if necessary — all these were denied the soldier. He intended to vote for the regular nominees of the party with which his political beliefs coincided, but he was not furnished with the names of all of them, or the emblem which the Legislature has provided for the guidance of the voter. He, therefore, announces that he votes the straight Democratic ticket.

With the policy of the Nation and the State in this great crisis presented to us, with the positive command of the Constitution before us, we are not prepared to say that he has lost his vote under the existing conditions. The situation was forced upon him by the failure of the election officials at home to furnish him with the list of candidates, with a statement of the party to which such candidates belonged, and with the party emblem attached, that is furnished to and confronts every other voter when he exercises the franchise on election day. Marked ballots are contrary to the spirit of our election laws, because, through such marks, it may be determined how an elector voted, and the door to corruption, intimidation and

the like may be opened. The courts have construed the law strictly to avoid this evil. But, in our opinion, the important thing, the fundamental thing, in the case of the soldier vote, is the absolute right of the man removed from home, and the surroundings which would make it just and proper to hold him to strict observance of the regulations — the right of this man to cast his vote, unaffected by such informality as is here pointed out. We do not say that, if there were proof of corruption or wrongdoing on the part of the soldier or sailor, this fundamental right would overbalance the wrong. But in this case we find no such thing, and in this first election in the great war we think the courts should see to it that the right of this soldier to cast his vote should be protected and that the vote should be counted.

The order of the Special Term is, therefore, modified to reverse the decisions under the appeal of relator Fiske, and to affirm the determination as to the McCarthy ballot; and as thus modified the order is affirmed, but without costs.

Mr. Justice PUTNAM, however, dissents in respect to the McCarthy ballot on the ground that the writings thereon violated the requirement for secrecy of such vote. (*People ex rel. Nichols* v. *Board of Canvassers*, 129 N. Y. 395, 403, afterwards carried into the Constitution, art. 2, § 5.) (See *Pennington* v. *Hare*, 60 Minn. 146, 150.)

JENKS, P. J., RICH, PUTNAM, BLACKMAR and KELLY, JJ., concurred; PUTNAM, J., dissented only as to the McCarthy ballot.

Order of December 26, 1917, reversed, so far as it rejected the ballots marked in the blanks for superintendent of the poor and city chamberlain, but affirmed as to the ballot of McCarthy.